# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

GREGORY WOLF,

    Plaintiff

v.

STATE OF NEVADA ex rel. NEVADA
DEPARTMENT OF CORRECTIONS, et al.,

    Defendants

Case No.: 3:22-cv-00308-MMD-CSD

**REPORT & RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**

Re: ECF No. 49

      This Report and Recommendation is made to the Honorable Miranda M. Du, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

      Before the court is Plaintiff's motion for leave to amend first proposed first amended complaint. (ECF Nos. 49, 49-1.) Defendants filed a response. (ECF No. 52.) Plaintiff filed a reply. (ECF No. 55.)

      After a thorough review, it is recommended that the motion be granted in part and denied in part.

## I. BACKGROUND

      Plaintiff is an inmate in custody of the Nevada Department of Corrections (NDOC). Represented by counsel, on July 5, 2022, he filed his original complaint pursuant to 42 U.S.C. § 1983. The general basis of Plaintiff's lawsuit is the alleged denial and/or delay of treatment for his severe cataracts. Plaintiff claims he repeatedly asked NDOC to provide him with necessary corrective surgery, but his requests were denied or ignored, causing Plaintiff's condition to worsen, until he became blind in both eyes. Plaintiff eventually had surgery on the left eye on

October 4, 2020 (after being further delayed due to the COVID-19 pandemic), but he alleges the surgery only partially restored his vision in his left eye as a consequence of the delay. Plaintiff continued to request evaluation and treatment for his right eye, to no avail. He claims that he was retaliated against with threats to delay or withhold treatment because of his complaints against the medical department and medical staff. He avers that he was told he may never get corrective surgery for the right eye because NDOC policy requires cataract surgery for one, but not both eyes. (ECF No. 1.)

On December 20, 2022, Chief District Judge Du screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A. (ECF No. 10.) The State of Nevada ex rel. NDOC was dismissed without prejudice due to Eleventh Amendment sovereign immunity. Plaintiff was allowed to proceed with: (1) an Eighth Amendment deliberate indifference to serious medical needs claim against defendants Dr. Marks, R. Donnelly, Dr. W. Donnelly, and Dr. Minev related to the denial and delay of treatment for his cataracts; (2) a First Amendment retaliation claim against Dr. Marks, Dr. Minev and R. Donnelly based on their threats to delay or withhold treatment due to his complaints against the medical department and its staff; and (3) a Fourteenth Amendment equal protection claim against Dr. Marks, R. Donnelly, Dr. W. Donnelly, and Dr. Minev, based on allegations that they would only perform surgery on one eye, and that they performed the requested surgery on other inmates (who did not file grievances). (ECF No. 10.)[1]

The action was stayed to allow the parties to participate in the court's Early Mediation Conference (EMC) program. (ECF Nos. 10, 12.) The EMC was held on March 28, 2023, but the EMC was unsuccessful. (ECF No. 14.) On April 17, 2023, the court issued its service order (ECF

---

[1] Defendants filed a suggestion of death as to Dr. W. Donnelly, and while he has not yet been dismissed by Chief Judge Du, he has not been included as a defendant in the proposed amended pleading. (ECF Nos. 39, 44.)

No. 17), and on May 8, 2023, the Attorney General's Office accepted service for Dr. Marks and Dr. Minev, and subsequently accepted service for R. Donnelly. (ECF Nos. 18, 25.)

On October 10, 2023, the court entered an amended scheduling order providing, among other things, a deadline of January 10, 2024, to file a motion for leave to amend, and a discovery cutoff date of April 9, 2024. (ECF No. 48.)

On January 10, 2024, Plaintiff timely filed this motion for leave to amend and proposed first amended complaint (FAC). In the proposed FAC, Plaintiff seeks to: (1) re-name NDOC as a defendant; (2) name the Nevada Board of Prison Commissioners and the three individual commissioners in their official capacities for declaratory and/or injunctive relief only; (3) name current NDOC Director James Dzurenda and current Acting Medical Director Dr. Joseph Benson in their official capacities only; (4) add additional facts and three additional causes of action for violation of Title II of the Americans with Disabilities Act (ADA), violation of Article 1, section 6 of the Nevada Constitution (the State corollary to the Eighth Amendment's Cruel and Unusual Punishment Clause), and a State law claim for Intentional Infliction of Emotional Distress (IIED); and (5) to allege *Monell* liability.

## II. LEGAL STANDARD

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A), (B). Otherwise, a party must seek the opposing party's written consent or leave of court to amend a pleading. Fed. R. Civ. P. 15(a)(2). Here, Plaintiff was required to seek leave to amend.

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend need not be given where amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted).

Finally, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). The requirement to screen an inmate's complaint overlaps with the futility analysis noted above because if a complaint or claim therein is frivolous, malicious or fails to state a claim or seeks relief from an immune defendant, amendment may be futile.

## III. DISCUSSION

### A. Prejudice, Delay and Bad Faith

Defendants argue that Plaintiff's motion should be denied because Plaintiff knew of the basis of the amendment previously and amendment will cause Defendants to be put through the time and expense of continued litigation on a new theory, with the possibility of additional discovery.

Defendants have not identified any specific prejudice, other than having to continue litigating this matter, and *possibly* engaging in additional discovery. Defendants acknowledge, however, that the proposed FAC is based on the same core set of facts as the original complaint:

4

the denial and/or delay in providing Plaintiff with requested cataract surgery. While Defendants argue that allowing new claims to be added would force Defendants to litigate on new theories, the court is only recommending that Plaintiff be permitted to amend to add the ADA and Nevada Constitution claims, and both of those claims advance theories similar to the ADA and equal protection claims already proceeding in this action.

With respect to delay, Plaintiff has timely sought leave to amend within the confines of the scheduling order deadlines, and the parties still have time to complete discovery. As Plaintiff points out, Defendants have not propounded any written discovery, nor taken any depositions. Even if a brief extension of discovery is requested, the court does not find that would unduly prejudice the Defendants.

Defendants further contend that screening is required and would cause undue delay. The court acknowledges that screening is required, but the court is promptly screening the proposed amended complaint; therefore, no undue delay will occur as a result of screening.

Finally, Defendants do not suggest that amendment is sought in bad faith.

There is no evidence of prejudice, bad faith, undue delay or dilatory motive. Therefore, amendment should not be denied on these grounds.

**B. SCREENING**

**1. Standard**

Under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous,

malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the

district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

### 2. Statute of Limitations and Relation Back

Defendants argue that amendment would be futile because the proposed amendment is outside the applicable statute of limitations and does not relate back to the original complaint.

An amendment to a pleading relates back to the date of the original pleading under certain circumstances and, as such, avoids the applicable statute of limitations. Fed. R. Civ. P. 15(c)(1).

Preliminarily, the statute of limitations is not apparent from the face of the proposed FAC. "[T]he applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005) (citations omitted); *see also Soto v. Sweetman,* 882 F.3d 865 (9th Cir. 2018). Any applicable tolling is not apparent here. As a result, the court does not know, based on the original or proposed amended pleading, when the statute of limitations began, or when it concluded, to know whether or not Rule 15(c) and the relation back doctrine even apply to the amendment. Nor do Defendants specifically address the running of the statute of limitations.

In any event, the new claims arose out of the same facts as those asserted in the original complaint, and the new defendants likely had sufficient notice of the action so that they will not be prejudiced in their defense. Fed. R. Civ. P. 15(c). It is being recommended that Plaintiff be allowed to proceed with an amended complaint only against "new" defendants NDOC, Director Dzurenda and Acting Medical Director Dr. Benson, and Commissioners Lombardo, Ford, and Aguilar, who are all sued only in their official capacities for declaratory and/or injunctive relief purposes. NDOC was sued in the original complaint, and although it was dismissed on screening,

it participated, as an interested party under a limited notice of appearance, in the EMC.

Presumably, all of these Defendants will be represented by the Attorney General's Office.

Therefore, amendment should not be precluded on this basis.

**3. NDOC and Title II of the ADA**

Defendants argue that the proposed ADA claim is an improper attempt to skirt Eleventh Amendment immunity and is duplicative of the Eighth Amendment claim.

"Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Id*.

Under Title II of the ADA, "a qualified individual with a disability" cannot "by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. State prisons qualify as a public entity under Title II of the ADA. *See United States v. Georgia*, 546 U.S. 151, 154 (2006) (citation omitted); *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998). Discrimination under the ADA includes a public entity's failure to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity." 28 C.F.R. § 35.130(b)(7).

First, a claim under Title II of the ADA is properly asserted against NDOC. *See* 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution

of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."); *U.S. v. Georgia*, 546 U.S. 151, 154 (2006) (citation omitted) (noting this has been interpreted as an "unequivocal expression of Congress's intent to abrogate state sovereign immunity").

Second, the court finds Plaintiff has adequately asserted a claim for violation of Title II of the ADA in the proposed FAC.

Defendants further argue that Plaintiff never alleges he asked for an accommodation. However, Plaintiff specifically alleges that he asked for an accommodation in the form of a request for treatment despite the one good eye policy.

Next, Defendants argue that Plaintiff is trying to create an end-run around the Eighth Amendment by asserting this claim. In *Miller v. Aranas*, NDOC similarly argued that the inmate plaintiff was attempting to create an end-run around the Eighth Amendment by asserting a claim for violation of Title II of the ADA based on the failure to provide him with medical treatment. That case also involved an inmate within NDOC who claimed that he was discriminated against when NDOC failed to modify its policies to allow him to have surgery for blindness in his right eye caused by cataracts. In that case, in analyzing a motion for summary judgment, the court conceded that whether the plaintiff could proceed with his claim under the ADA was a close call, however, the court accepted the allegation that the inmate was denied surgery pursuant to NDOC policy because he was blind in one eye (because of his disability). The court nevertheless found a dispute of material fact in that case regarding whether the plaintiff was denied surgery because of his disability. *Miller v. Aranas,* Case No. 3:17-cv-00068-MMD-CSD, 2021 WL 1397232 (D. Nev. Feb. 5, 2021), *report & recommendation adopted*, 2021 WL 1041912 (D. Nev. Mar. 17, 2021).

The parties may still argue that there is or is not a valid ADA claim in a properly supported motion for summary judgment, but for purposes of analyzing the allegations of a pleading, which the court must take as true, Plaintiff has sufficiently stated a claim under the ADA at this juncture.

**4. The Nevada Board of Prison Commissioners and Commissioners Lombardo, Ford, and Aguilar**

Plaintiff's proposed FAC names the Nevada Board of Prison Commissioners and each of the members of that commission: Governor Joseph Lombardo, Attorney General Aaron Ford, and Secretary of State Cisco Aguilar. The commissioners are sued only in their official capacities for declaratory and/or injunctive relief.

First, the Nevada State Board of Prison Commissioners is an agency of the State of Nevada. *See Ruley v. Nevada Board of Prison Commissioners,* 628 F.Supp. 108, 110 (D. Nev. Feb. 4, 1986). The State and agencies that are an arm of the State are immune from suit and are not persons who can be sued under Section 1983. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1998); U.S. Const. amend XI. Therefore, the Nevada State Board of Prison Commissioners should be dismissed with prejudice.

Second, the court finds that Plaintiff should be permitted to name the individual commissioners at this point as they are only named in their official capacities in order to implement any injunctive relief. *See Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012) (official capacity suit for injunctive relief properly brought against any person who "would be responsible for implementing any injunctive relief."); *see also Thomas v. Cox*, Case No. 2:16-cv-00080-JAD-CWH, 2018 WL 3845157, at *3-4 (D. Nev. Aug. 13, 2018) (denying summary judgment for prison commissioners sued in official capacity for injunctive relief because it was not clear

1  that the medical director had unilateral authority to formulate a new, binding hepatitis-C policy

2  that could affect the entire prison budget). The Commissioners are, of course, free to file a

3  properly supported motion for summary judgment at the appropriate time that argues they are not

4  responsible for implementing the requested injunctive relief, but the court does not address that

5  issue now as their ability to implement any requested injunctive relief is not apparent from the

6  proposed pleading.

7  **5. NDOC Director Dzurenda and Acting Medical Director Dr. Joseph Benson**

8  The court finds it is appropriate to name Director Dzurenda and Acting Medical Director

9  Dr. Benson for purposes of effectuating any potential injunctive and/or declaratory relief. *See*

10  *Pouncil*, 704 F.3d at 576; *see also Colwell v. Bannister*, 763 F.3d 1060, 1070-71 (9th Cir. 2014)

11  (prison director and warden were proper defendants in official-capacity suit seeking injunctive

12  relief for violation of the Eighth Amendment).

13  **6. Article 1, Section 6 of the Nevada Constitution**

14  Article 1, Section 6 of the Nevada Constitution mirrors the Eighth Amendment's Cruel

15  and Unusual Punishment Clause.

16  Defendants argue that this claim is duplicative and improperly asserted in federal court as

17  it is barred by the Eleventh Amendment and there is no private right of damages.

18  Preliminarily, Plaintiff cannot proceed with this claim against NDOC, as NDOC, as an

19  arm of the State, is immune from suit under the Eleventh Amendment.

20  To the extent Plaintiff asserts this claim against defendants in their individual capacities

21  and against others in their official capacities for injunctive and/or declaratory relief only, courts

22  within this district have applied the same legal standard to Article 1, Section 6 of the Nevada

23  Constitution as are applied to the Eighth Amendment, and have allowed such claims to proceed

in federal court. *See Meeks v. Nev. Dep't of Corr*, 3:18-cv-00431-MMD-WGC, 2020 WL 8084979, at *19 (D. Nev. Nov. 10, 2020) (collecting cases), *report & recommendation adopted,* 2021 WL 53619 (D. Nev. Jan. 6, 2021); *see also Lucia Ramos-Quirarte v. State of Nevada,* No. 2:23-cv-01778-RFB-NJK, 2024 WL 453605 (D. Nev. Jan. 4, 2024) ("the Court is not convinced by Defendants' arguments that, *inter alia*, there is no private right of action" and citing cases).

In *Mack v. Williams*, 522 P.3d 434 (Nev. 2022), the Nevada Supreme Court considered two questions certified to it by the United States Court for the District of Nevada concerning "a private plaintiff's ability to enforce by private right of action due-process and search-and-seizure rights guaranteed under the Nevada Constitution and a defendant's accompanying ability to defend such actions." 522 P.3d at 439. The Nevada Supreme Court declined consideration of the question as to due process rights, but "conclude[d] that a private right of action for money damages exists to vindicate violations of search-and-seizure rights under the Nevada Constitution, but a qualified-immunity defense does not apply to such an action." *Id*. It did not address whether a private right of action exists with respect to Article 1, Section 6 of the Nevada Constitution. The Nevada Supreme Court did point out that "although the Nevada Constitution does not address enforcement of individual rights, it also does not foreclose an implied right of action for money damages based on violations of those rights." *Id*. at447.

Therefore, Plaintiff should be permitted to proceed with this claim against Dr. Marks, Donnelly, Dr. Minev, and the following defendants in their official capacity for declaratory and/or injunctive relief: Commissioners Lombardo, Ford, and Aguilar as well as Dzurenda and Dr. Benson.

///

///

**7. IIED**

Defendants argue this claim is barred by the Eleventh Amendment. The proposed FAC asserts this claim against Dr. Marks, Donnelly, Dr. Minev, and NDOC. In his reply brief, Plaintiff indicates that NDOC was mistakenly included as a defendant in this claim.

The State of Nevada has generally waived sovereign immunity for state *tort* actions in *state court*. Nev. Rev. Stat. § 41.031(1). In order to sue the State of Nevada or a state employee under such a claim, the plaintiff is required to sue the State of Nevada or appropriate political subdivision. Nev. Rev. Stat. §§ 41.031, 41.0337.

"The Eleventh Amendment grants a State immunity from suit in *federal* court by citizens of other states, U.S. Const. amend. XI, and by its own citizens as well[.]" *Walden v. Nevada*, 945 F.3d 1088, 1092 (9th Cir. 2019) (emphasis added, citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). "States can waive their Eleventh Amendment sovereign immunity from suit in state and federal court." *Id.* (citing *Lapides v. Bd. of Regents of Univ. Sys. Of Ga.*, 535 U.S. 613, 618-21 (2002)).

With respect cases filed in *federal court*, the State of Nevada has not expressly waived its immunity from suit conferred by the Eleventh Amendment. Nev. Rev. Stat. § 41.031(3). Generally, the State of Nevada and arms of the state cannot be sued in federal court. *See O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982) (holding that "Nevada has explicitly refused to waive its immunity to suit under the eleventh amendment . . . The Supreme Court has made it clear that section 1983 does not constitute an abrogation of the eleventh amendment immunity of the states.").

Absent a waiver of Eleventh Amendment immunity, where the State of Nevada is an indispensable party (such as under NRS 41.0337 which requires the State or political subdivision to be named in a tort claim arising out of an act or omission within the scope of public duties or

employment), the federal court does not have supplemental jurisdiction over the state law tort

claim because it does not have jurisdiction over the indispensable party—the State. *See Hirst v.*

*Gertzen*, 676 F.2d 1252, 1264 (9th Cir. 1982) (holding that, where Montana law deemed

governmental entities indispensable parties in a state tort claim against a state employee, the

federal court had no supplemental jurisdiction over the state tort claim if it had no jurisdiction

over the indispensable party). While Plaintiff may sue NDOC for the alleged violation of Title II

of the ADA, it may not sue NDOC in federal court in connection with a Nevada tort claim.

Therefore, the IIED claim should be dismissed without prejudice so Plaintiff may pursue

that claim in State court if he desires.

**8. *Monell* Liability**

In his reply brief, Plaintiff asserts that he only seeks to assert *Monell* liability against

individuals in their individual capacities.

*Monell v. Department of Social Services*, 436 U.S. 658, 690-95 (1978), is a case that

holds that *municipalities* can be held liable under section 1983 under certain circumstances.

Defendants are correct that *Monell* liability is not applicable here, where Plaintiff has not sued a

municipality such as a county or city. Therefore, to the extent Plaintiff seeks to amend to assert

*Monell* liability, his motion should be denied.

**IV. RECOMMENDATION**

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING**

**IN PART AND DENYING IN PART** Plaintiff's motion for leave to amend (ECF No. 49) as

follows:

The motion should be **GRANTED** insofar as Plaintiff seeks leave to amend to assert the

alleged violation of Title II of the ADA against NDOC;

The motion should be **GRANTED** insofar as Plaintiff seeks leave to amend to assert claims against Nevada Board of Prison Commissioners Lombardo, Ford, and Aguilar, in their *official* capacities for declaratory and/or injunctive relief only, but **DENIED** insofar as Plaintiff seeks to amend to name the Nevada Board of Prison Commissioners itself;

The motion should be **GRANTED** insofar as Plaintiff seeks to amend to assert claims against Director Dzurenda and Acting Medical Director Dr. Benson in their *official* capacities only for declaratory and/or injunctive relief;

The motion should be **GRANTED** insofar as Plaintiff seeks to amend to add a claim under Article I, Section 6 of the Nevada Constitution against Dr. Marks, Donnelly, Dr. Minev, Commissioners Lombardo (official capacity only), Ford (official capacity only), and Aguilar (official capacity only), Dzurenda (official capacity only) and Dr. Benson (official capacity only), but **DENIED** insofar as he seeks to amend to assert a claim under Article 1, Section 6 of the Nevada Constitution against NDOC of the Nevada Board of Prison Commissioners;

The motion should be **DENIED** insofar as Plaintiff seeks to amend to add an IIED claim; and

The motion should be **DENIED** insofar as Plaintiff seeks to amend to add a claim for liability under *Monell*.

Plaintiff should be given 21 days from the date of any order adopting and accepting this Report and Recommendation to file a new first amended complaint that conforms to these recommendations. The Attorney General's Office should be directed to then file a notice indicating whether they will accept service of the first amended complaint, and file under seal the last known address of any defendant for whom it cannot accept service. For those defendants for

whom the Attorney General's Office accepts service, an answer or responsive pleading should be required to be filed within 21 days of the date of acceptance of service.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: February 23, 2024

_____
Craig S. Denney
United States Magistrate Judge